***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has shown good grounds to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of the law the following, which were entered into by the parties as:
 STIPULATIONS
1. The carrier on the risk at the time of the alleged injury by accident was RSK Company.
2. Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The employer-employee relationship existed between the employer and the employee on January 4, 2002, the alleged date of injury.
3. In addition, the parties stipulated into evidence a packet of documents which included an accident investigation report, Industrial Commission forms, discovery responses and medical records and reports.
4. The Pre-Trial Agreement dated November 21, 2003, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a fifty year old high school graduate who had at least two years of business office or business education experience and had obtained a certification as a nursing assistant.
2. In November 2001 the plaintiff began working for defendant as a patient care technician at a dialysis center.
3. On January 4, 2002 while working for defendant, the plaintiff was called to assist a patient sitting in a chair who wanted to put her head back. Plaintiff pushed the lever on the chair to push it back and it caused the chair to move back quickly. The plaintiff felt a burning sensation from her groin area up into her breasts. Sherry Peoples, plaintiff's preceptor, came to assist the plaintiff with adjusting the chair.
4. At the hearing before the Deputy Commissioner, the plaintiff testified that she did not immediately report her injury to Ms. Peoples because she did not believe it to be serious. Plaintiff continued to work for defendant for the rest of the day and thereafter. Plaintiff also continued to experience pain in her back and in her left leg.
5. On January 10, 2002 the plaintiff was authorized to be out of work by her family physician, Dr. Eddie Powell, due to the flu. Plaintiff was due to return to work after the flu on January 14, 2002 but her leg pain worsened.
6. As a result of plaintiff's leg pain, she presented to Highsmith Rainey Memorial Hospital Emergency Room on January 13, 2002. The plaintiff reported left flank pain for the prior four days. Physician's Assistant, Robert Pate, diagnosed the plaintiff with low back and lumbar strain. Plaintiff was taken out of work for three days and told to follow up with her primary care physician, Dr. Powell.
7. Plaintiff's back and leg pain continued and on January 15, 2002 she returned to Dr. Eddie Powell, Family Practitioner and Internist, again complaining of severe left leg pain. Dr. Powell recommended an MRI which revealed a small central herniated nucleus pulpous focal to L4-L5 without exiting nerve root mass effect but with a mild degree of lateral recess angle stenosis at that level.
8. The plaintiff testified at the hearing that she returned to work on January 16, 2002 notwithstanding her ongoing left leg pain. The plaintiff continued to work until Dr. Powell took her out of work on February 28, 2002 because she was not improving.
9. At the hearing before the Deputy Commissioner, the plaintiff testified that she gave her out of work note to her supervisor, Diane Williamson, on March 1, 2002 and informed Ms. Williamson that she had hurt her back while at work for the defendant in January. The plaintiff further testified that Ms. Williamson then gave the plaintiff a leave of absence form and a medical disability claim form for the plaintiff and her physician to complete. The plaintiff and Dr. Eddie Powell submitted their respective parts of the claim form but the carrier denied the plaintiff's request for disability citing a probable work related injury as the cause of plaintiff's injury.
10. The plaintiff continued to experience back and leg pain and on April 4, 2002 she presented to Dr. William Craven, a neurologist. The plaintiff reported back pain dating back to January 2002 and reported her attempt to catch a patient who was falling backwards in one of the dialysis chairs. Dr. Craven diagnosed a lumbar sprain and performed lumbar epidural facet and S1 blocks. The plaintiff initially reported improvement in her back pain but it subsequently returned. Dr. Craven recommended physical therapy and a neurological consult.
11. The plaintiff's back pain continued and on June 4, 2002 she presented to Dr. Timothy Holcomb, Chiropractor. Dr. Holcomb diagnosed lumbar connective tissue sprain/strain injury with associated paravertebral muscle spasms and muscle inflammation, spinal segmental dysfunction and L4, L5 and S1 spinal nerve root irritation with left sciatic nerve involvement. Dr. Holcomb treated plaintiff with manipulation and adjunctive therapy.
12. Dr. Holcomb opined that plaintiff was unable to engage in gainful employment due to her injury of January 2002. Dr. Holcomb also opined that plaintiff reached "maximum symptomatic improvement" on October 29, 2002 and referred her to her family physician for medical management of her symptoms.
13. On September 16, 2002, the plaintiff presented to Dr. George Huffmon, III, a neurosurgeon. The plaintiff reported that she injured her back in January of 2002 while at work helping a patient with her chair. Dr. Huffmon initially diagnosed the plaintiff with degenerative disc disease and spondylosis and referred the plaintiff for an MRI. The MRI revealed a moderate sized central disc extrusion at L4/5 resulting in moderate central canal stenosis with facet joint arthrosis contributing to the central canal stenosis.
14. Dr. Huffmon opined that when the plaintiff helped a patient lower her head in the dialysis chair in January 2002 and the chair went back quickly that it more likely than not aggravated plaintiff's degenerative disc disease and her spondylosis. Dr. Huffmon further opined to a reasonable degree of medical certainty that the January 2002 incident caused the plaintiff's disc herniation at the 4-5 level.
15. Dr. Huffmon opined that the plaintiff could not return to work to her previous position as a patient care technician. However, as of December 9, 2002, Dr. Huffmon restricted the plaintiff to no bending, no stooping and no lifting, pushing or pulling more than about twenty pounds. Dr. Huffmon stated that the plaintiff cannot maintain a sitting or standing position for any "appreciable length" of time and must frequently change positions at "unpredictable intervals" to accommodate her pain and even "lie down through the course of the day to relieve pain." Dr. Huffmon finally opined that plaintiff possibly could return to work if she could find a job within all of the restrictions he presented.
16. On October 14, 2002 the plaintiff presented to Dr. John Knab, an anesthesiologist and pain management specialist, per Dr. Huffmon's referral. The plaintiff again reported being injured at work for defendant while assisting a patient lower her head in a chair that moved quickly. Dr. Knab also diagnosed degenerative disc disease with lumbosacral radiculopathy in the L4/L5 distribution. Dr. Knab opined that plaintiff's injury at work in January 2002 aggravated her underlying degenerative disc disease that had previously been asymptomatic. As of December 13, 2002, Dr. Knab restricted plaintiff from lifting more than 10 to 15 pounds, sitting for more than 20 to 30 minutes and limited her twisting, bending at the waist and forward leaning, pushing, pulling of back muscles.
17. Dr. Powell also opined that plaintiff's January 2002 work injury more likely than not caused her herniated disc and that he deferred his opinions regarding plaintiff's prognosis and ongoing treatment to Dr. Huffmon.
18. On November 18, 2003 the plaintiff met with Robert Manning, Certified Rehabilitation Specialist, for her first and only visit. Mr. Manning, however, only saw the plaintiff once and he never reviewed the specific job description of plaintiff's prior job duties. Mr. Manning did determine that the plaintiff could perform light duty clerical work but he pursued no job leads and failed to encourage the plaintiff to pursue any job leads.
19. Notwithstanding his one-time only consultation with the plaintiff, Mr. Manning opined to a reasonable degree of vocational certainty that based on his findings as to age, work history, education and physical restrictions per plaintiff's medical records that plaintiff could not return to her previous work and would struggle to find and maintain any other job. Mr. Manning did acknowledge that he knew that the plaintiff had previously worked in a clerical position and that plaintiff had made no attempts to return to work within her prescribed light duty restrictions. However, Mr. Manning still determined that the plaintiff would struggle to find and maintain any other job.
20. The Full Commission finds the plaintiff to be credible.
21. At the hearing before the Deputy Commissioner, the plaintiff testified that she could not perform any heavy lifting, bending, stooping, squatting, or twisting due to the pain in her back. Plaintiff further testified that she had to frequently change positions, rest and take medication to alleviate her ongoing pain. The Full Commission finds that plaintiff's self-imposed restrictions are almost the very same restrictions given to her by Drs. Powell, Huffmon and Knab. Plaintiff's physicians recognized and identified the plaintiff's physical limitations and yet still opined that she could return to work within these restrictions.
22. The Full Commission gives greater weight to the opinions of the physicians that treated plaintiff over a period of time regarding her ability to return to work over the opinion of Mr. Manning who only saw the plaintiff once. Drs. Powell, Huffmon and Knab all opined that although plaintiff did have restrictions, she could indeed return to work within those restrictions. Even Dr. Holcomb determined that plaintiff was at "maximum symptomatic improvement" as of October 29, 2002.
23. The Full Commission finds that there was no unreasonable delay in providing written notification to the defendants of plaintiff's injury when she submitted her out-of-work note on March 1, 2002. Initially, the plaintiff did not believe her injury to be serious and she had been excused from work medically for her leg and back pain, on only two other days, January 14 and 15, 2002, prior to February 28, 2002 when Dr. Powell took her out of work. On March 1, 2002 when the plaintiff gave the out of work note to her supervisor, Ms. Williamson, she told her that she had injured her back while at work for the defendant in January. The Full Commission further finds that there was no unreasonable delay in plaintiff's reporting of her injury by accident and that the defendants were not prejudiced.
24. The competent evidence in the record establishes that the plaintiff sustained an injury by accident to her back and as a direct result of the work assigned in January 2002.
25. The competent evidence in the record further establishes that the plaintiff was unable to earn wages from March 1, 2002 until December 13, 2002. Thereafter, the plaintiff failed to make reasonable efforts to return to work even though she was released to do so on December 13, 2002. The plaintiff failed to show that she is incapable of any work after December 13, 2002 due to a disability or that any efforts to obtain work have been unsuccessful.
 ***********
Based upon the foregoing Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Because there was no unreasonable delay in providing written notification of her injury to defendants and defendants were in no manner prejudiced, plaintiff's claim is not barred. N.C. Gen. Stat. § 97-22.
2. The plaintiff sustained an injury by accident to her back arising out of and in the course and scope of her employment and as a direct result of a specific traumatic incident of the work assigned in January 2002. N.C. Gen. Stat. § 97-2(6).
3. As a result of the plaintiff's compensable injury, she is entitled to receive temporary total disability compensation at the rate of $223.31 per week beginning March 1, 2002 and continuing until December 13, 2002. Compensation due that has accrued shall be paid in a lump sum. N.C. Gen. Stat. § 97-29.
4. The plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred as a result of her injuries by accident of January 2002, including more thorough and continued vocational rehabilitation services with Mr. Robert Manning, for so long as such examinations, evaluations and treatments may reasonably be requested to effect a cure, or give relief and will tend to lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25; 97-2(19).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney fee herein approved, defendants shall pay to plaintiff temporary total disability compensation at the rate of $223.31 per week beginning on March 1, 2002 and continuing until December 13, 2002. Compensation due that has accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury in January 2002, including more thorough and continued vocational rehabilitation services with Mr. Robert Manning, for so long as such examinations, evaluations and treatment may be reasonably necessary to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the lump sum compensation awarded plaintiff in Paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be deducted from those amounts and payable directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the ___ day of June 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER